[Criminal No. 349.   Filed June 23, 1914.]

[141 Pac. 704.]

LOUIS NELSON, Appellant, v. STATE, Respondent.

HOMICIDE—EVIDENCE—ADMISSIBILITY.—In a prosecution for homicide, where accused conceded that he fired the fatal shot, but claimed that he fired in self-defense and that deceased first shot at him, the exclusion of evidence that deceased was armed and had threatened accused is error; Penal Code of 1913, paragraph 1046, providing that, the commission of the homicide by the accused being proved, the

burden of proving circumstances of mitigation or of justification devolved upon accused, unless the proof of the state shows the homicide to be excusable or justifiable, and the attitude of deceased, as shown by his threats and ability to carry them into execution, was material on the question of self-defense.

[As to law of self-defense, see notes in 74 Am. St. Rep. 717; 109 Am. St. Rep. 804. As to burden of proof on issue of self-defense, see note in Ann. Cas. 1912C, 47.]

APPEAL from a judgment of the Superior Court of the County of Cochise. A. C. Lockwood, Judge. Reversed and remanded.

The facts are stated in the opinion.

Mr. J. F. Ross, for Appellant.

Mr. G. P. Bullard, Attorney General, and Mr. Leslie C. Hardy, Assistant Attorney General, for Respondent.

CUNNINGHAM, J.—The appellant was convicted of murder of the first degree, and the death penalty affixed. From the judgment of conviction, and from an order refusing a new trial, he appeals. He assigns the rejection of evidence offered by appellant, the admission of evidence over the objection of appellant, the misconduct of the court in commenting upon the purpose for which evidence was offered and received, and the misconduct of the county attorney in his remarks to the jury in reference to the appellant, as errors justifying a reversal.

The evidence offered and rejected, of which appellant complains, had reference to the plea of self-defense. The appellant admitted having fired the shots which caused the death of Albert Jones, but he claimed that the shots were fired in his necessary self-defense. Appellant testified that, as he entered a clubroom through a rear door, the deceased fired upon him from a revolver. Whereupon the accused returned the fire from a rifle he carried, firing three shots. From the evidence otherwise introduced the last of the three shots produced death. The prosecution contends that the deceased was unarmed when the shooting by the accused commenced. A woman, Clara Arlington, offered as a witness in behalf of

accused, testified that the deceased had a gun in his possession before the shooting commenced, she was not permitted to state what he was doing with it, or his object in having it. This witness stated that four shots were fired. Another witness, Vergie Stewart, offered by defendant, was not permitted to state whether the deceased had a gun. This witness was not permitted to state what deceased was saying and doing in regard to Nelson a few minutes before the shooting commenced. This same witness was not permitted to state whether or not deceased made threats toward the accused. The accused then offered to prove as follows:

"I desire to prove by the witness Nelson, the defendant, that prior to the time of the shooting, as testified by him, and when the deceased shot at him first, that the deceased, Jones, had on three different occasions, on the same evening, not exceeding three-quarters of an hour of the time Jones shot at Nelson, Jones threatened to kill Nelson; that twice the threats were made directly to the defendant, Nelson, and that when he made the last threat Jones had a gun; that when he made the threat next to the last threat was in Nelson's hearing, to the woman, Clara Arlington, and that he heard, during the time that Clara Arlington was trying to get the gun away from him, or getting him to give it to her, that Jones said that he was going to kill him, Nelson, and that Nelson then immediately passed out of the building to the front, and that Jones followed him to the front of the building with the gun in his hand, threatening him; that Nelson passed on around the building and went away; that immediately after these threats Nelson procured a gun. . . . And I further offer Nelson for the purpose of proving, at the time he got the gun was immediately after these threats, and that he took the gun because he believed it was necessary to protect himself against Jones on account of the threat previously made."

The ruling on this offer was:

"The court refuses the offer of the evidence tendered by the defense, except in so far as has been admitted."

The further offer was made to prove by Clara Arlington:

"That she was present; . . . that about a quarter of an hour before the shooting she saw Jones in the room next to the room where Nelson was, and that he had a pistol and

threatened to kill Nelson with the gun; that she tried to persuade him not to, but to give her the gun, but he refused; that he was at that time very angry, and expressed his determination to kill Nelson two or three times, and went out of the room in the direction that Nelson had gone, still making the threats; and that Nelson at the time was in an adjoining room.''

This offer was rejected. The appellant offered to prove by Virgie Stewart:

''That she was present at the same time with Clara Arlington, and heard the same threats, and at the time saw Nelson pass the door of the room where they were, within four or five feet of where she was, and where Nelson was, and go out of the building.''

This offer was rejected.

''Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.'' Paragraph 1046, Ariz. Pen. Code 1913.

The commission of the homicide by the defendant was not merely proven by other witnesses in this case, but was admitted by the defendant. Under such a state of facts, the law above quoted permits the defendant the privilege of offering evidence of the circumstances surrounding the transaction tending to show that the homicide was less than murder of the highest degree, or that the homicide was justifiable or excusable. The accused contends that the homicide was justifiable, because it was committed by the accused in the necessary defense of his person, in resisting an attempt of the deceased to murder the accused, or to do accused a great bodily injury by shooting him. The evidence offered and rejected tended to show the state of mind of the deceased toward the accused immediately before and leading up to the commencement of the shooting that terminated in the homicide. The vital question was: Which of the principals was the aggressor—which fired the first shot? The accused claimed and testified that the deceased fired the first shot. The prosecution contends that the deceased was unarmed

and that he fired no shot. The evidence offered and rejected tended to throw light upon the controversy. To reject such evidence, tending to place before the jury all the circumstances surrounding the transaction, was equivalent to denying to the accused, after he had admitted the commission of the homicide, the right of proving circumstances of mitigation, or that justified or excused his act, deprived him of making any defense, and was reversible error.

The respondent contends that the facts in evidence bring this case within the rule announced in the case of *Campbell* v. *Territory,* 14 Ariz. 109, 113, 125 Pac. 719, viz.:

"Where the law of self-defense is not in the case, evidence of the hostile feelings or acts of the deceased, or of previous quarrels, is irrelevant and inadmissible on the part of the defendant."

We adhere to that rule, but it is not applicable to a case where there is any evidence of violence offered by the deceased toward the accused at the beginning of the affray which ended in the homicide, for then there is some evidence upon which to found the plea of self-defense, and the rule announced is not applicable. In this case the accused testified that deceased fired upon him before accused made any demonstration toward deceased. It was for the jury to determine, from all the facts and circumstances tending to throw light upon the question, the truth in that respect. The mental state exhibited by deceased, shortly prior to the affray, whether deceased was armed with a weapon from which he might have fired a shot at the accused, anything he might have said concerning the accused, or expression of his intention in the future carrying out of threats made, if he made threats, and such like matters, would tend to throw light upon what subsequently took place and which of the two combatants was the aggressor, and from which and other facts and circumstances in evidence the jury could more accurately arrive at the guilt or innocence of the defendant.

The mental state of the deceased, as exhibited by threats made by him, his ability to carry out such threats, and his placing himself in a position to carry out such threats, are circumstances properly to be considered by the jury in determining who was the aggressor, and the probability or improbability of the claim of accused. The accused offered to

prove that he heard the threats made by deceased. The evidence offered and rejected, if believed by the jury, would justify an inference that the accused, in the light of such threats and other circumstances appearing to him, entertained a belief that the threats made would be carried out, and in order to protect himself from great bodily injury or the loss of his life at the hands of accused, and acting solely upon that belief, he committed the homicide. The circumstances under which he acted would tend to explain his intentions in respect thereto. To reject such evidence so tending to explain the acts of defendant is equivalent to denying to defendant a right to a defense given him by law in a case where the commission of the homicide by the defendant is proven, or, as here, admitted.

The view we take of the case, makes a consideration of the other assignments unnecessary. Upon a new trial, we presume that the same, if erroneous, will not again occur.

The judgment is reversed and cause remanded for a new trial.

FRANKLIN, C. J., and ROSS, J., concur.